The next case for argument is 23-1911, Xerox Corporation v. Meta Platforms. Mr. Fowler, good morning.  Please proceed. Good morning, Your Honors. May it please the Court, Charles Fowler for Xerox Corporation. I plan to focus this morning on three issues. First, that the asserted prior art does not teach the previously unseen limitation in the 781 claim. And that's got two parts. One, Meta's primary reference, Koenig. And then second, I'll address the lack of a motivation to combine Koenig with Meta's secondary reference, Van Vliet. And then the third issue that I plan to address this morning is the lack of a motivation to combine Meta's primary reference with Manber, which was used to teach the separate threshold distance limitation in the 781 claims. So beginning with the previously unseen element and the primary reference, Koenig. Meta's entire argument with respect to Koenig teaching the previously unseen element focuses on a short disclosure at Column 24 of the Koenig reference, which is a patent that talks about applying Koenig's user model to predict interest in unseen documents. And the key error that Meta and the Broke made here is that unseen... It doesn't quite say that. It says actually applying the user model to unseen documents. That's right, Your Honor. And what the user model does in this contest is it's talking about calculating P of U given D, which is an estimate of user interest in the document. So that's the application of the user model as applied to unseen documents. And the error here is that unseen in Koenig is not about a limitation or exclusion. It is about an ability to address documents that the system has not seen before. And first... I guess I'm trying to understand what the point of your argument is. What characterizes it is saying that you contend that Koenig never expressly limits P of D to just unseen documents. Is that the essence of your argument, that it's not limited to just unseen documents? Correct, Your Honor. And the claim, however, does require limiting to only unseen documents. It's not only. That's the key thing you were talking about. That's the key... Correct, Your Honor. The key point in the claim, the key language in the claim is only documents previously unseen by the user. Koenig does not do that. We don't dispute the... But isn't it sort of our basic obviousness law that you don't have to say only? I mean, if the prior art consists of the fact that it can be applied to unseen documents, isn't that relevant prior art for the purpose of obviousness? Even if it has another section instead. And if you don't apply it, if you apply it otherwise, then you have another analysis. Is that not the way the law works? I don't think so, Your Honor. I don't think it would be obvious to a person of ordinary skill to do what our claim does, which is build a neighborhood to search in that excludes anything the user has seen before, unless the person of ordinary skill is looking at a reference that does that. And what our point is with respect to Koenig is that, one, we think Koenig applies the user model to both seen and unseen. Two, Koenig expressly teaches with respect to this personal crawler that Meta relies on, not limiting the search universe to previously unseen documents. And the way it does that is that, and this is at column 27, this is where the Koenig reference actually describes the search functionality that Meta relies on as teaching most of the challenge claim. It explains that the user model is applied to score each linked document. So what it's talking about there is Koenig takes what it calls an initialized stack of documents that are things the user has almost certainly seen before. It's documents that are of high interest to the user, like browsing history, bookmarks, things like that, and analyzes the links in those documents and crawls for other documents, and it applies the user model to score each document. And by using the word each there, it confirms that it is not excluding documents that the user has seen before from what it's applying the PUD formula to, and that undermines Meta's argument. Reinforcing that is the prosecution history, which we emphasized before the board, and the board did not address at all. The prosecution history confirms that unseen in Koenig is about ability or capability, not limitation. There is a section, and this is at appendix, I think it's 2448 and 49, where the inventors are distinguishing prior art search systems that are based on what it called a memorization model. In contrast, the invention in Koenig uses what it called a prediction or generalization model that unlike the prior art was able to deal with documents that the system had not seen before, and as the inventors explained, quote, there is no need to distinguish between seen and unseen documents. That's because the Koenig system can and does deal with them both equally, and that was what separated Koenig from the prior art. What do you mean deal with them equally? What does that mean? Well, analyze them. In other words, so Koenig applies its user model to predict user interest, and it only includes in the stack of documents at its crawling step documents that exceed a certain predicted level of user interest. So Koenig can do that whether it's seen in the document or not seen in the document, and that's the key difference between Koenig and the prior art that was being distinguished when the inventors explained there's no need to distinguish between seen and unseen documents. Can you remind me, did the board find the only unseen documents independently in Koenig and in Koenig combined with either, was it Mambo or Van Fleet? It did, Your Honor. The board used Van Fleet as a sort of alternative ground, and I'll turn to that one now. And your challenge to that has to do with the motivation to combine? Yes, Your Honor. The key challenge there is motivation to combine, and to frame that issue, Koenig, similarly to the 781 patent, proceeds in two steps. It does what it calls a crawling to build a stack of documents to search, which Meta says is equivalent to our proximal neighborhood in the 781 claim, and it applies a search query to the stack. And Van Fleet doesn't do that at all. Van Fleet is basically a system that stores and uses in various ways a user's browsing history, and there's a line in Van Fleet that talks about a functionality that uses the user history to basically filter out previously seen documents from the search results. So Meta does not dispute, and I think this is clear from the appellate briefing, that unlike our patent claim, which excludes previously seen documents at this sort of initial stack building, neighborhood building step, Van Fleet simply hides results after the search query is done. And the board basically said, that's fine, we can take this very generalized teaching from Van Fleet that deals with a post-query basically result filter, and apply it way back here at the proximal neighborhood building step of the 781 claim. Is it disputed or undisputed whether the proximal neighborhood is what is initially searched through or what you ultimately decide is even post-filtering the result? I believe it's undisputed in the 781 that the proximal neighborhood is what you search through. The system crawls links in a user's history to build the proximal neighborhood, and the proximal neighborhood is then what is searched. I think I probably asked my question badly. So the last element is query, right? I was putting that aside. You were distinguishing Van Fleet on the ground, I think, that it does some initial collection and then filters out the seen stuff. Is it clear that, and then the result of the filtering before you then pose questions, the queries to it, is only unseen stuff. I think Van Fleet's a little simpler than that. It is only a post-query filter. It only takes seen stuff out after the query. There's a search query, some results come out, and Van Fleet just hides the stuff that's been seen. That part is undisputed. So our first point is it's too much of a radical sort of abstraction or generalization to take that very different kind of teaching and apply it to our proximal neighborhood step. We don't think a person of ordinary skill would do that, and we think that's reinforced by the structure of CONIG, which doesn't just search the stack of documents that it builds. Basically, CONIG does its crawling and creates a stack of documents it believes are going to be of high interest to the user, but when it runs its query, it runs the query in both the results of the personal crawling and what it calls all documents D, which is the set of all documents. This is all in column 27 of CONIG, which is the personal search function that Meta relies on. And you think that, is it a fair description of the combination that the board relied on in the alternative that you don't take the full, the entirety of CONIG or the entirety of Van Fleet, you take only the parts of the two that produce what's claimed here, which is the querying of a database that's already been restricted to unseen? I think all the board did was it took one very generalized teaching from Van Fleet's post-query filter and added it to Van Fleet's stack building step. I think that's all it, otherwise the board's using Van Fleet's structure, which is build a stack, then add in all documents D, run a query in the stack. That's Van Fleet, sorry, that's CONIG's structure. And the board simply plucked the general notion of hiding results that had been seen before and applied it to just the stack building step of CONIG. And that's what it would. With motivation being that. It's not clear, Your Honor. We believe the motivation. Right. We believe the motivation's lacking. We think, as we say in our brief, we think CONIG, if anything, teaches away from adding that kind of filter because CONIG expressly teaches in column 27 that documents the user has seen before are of high interest. And, again, it would be somewhat of ordinary skill would not, even if they were going to apply Van Fleet's filter, they wouldn't do it at the stack building step because it would be pointless because CONIG searches in more than just its stack anyway. It searches in the stack and all documents D. So if you applied Van Fleet's filter to just the stack, the documents that are filtered out could be reincorporated into the search results because more than just the stack is searched. If the person of ordinary skill was going to apply that teaching at all to CONIG, they would do it just the way Van Fleet does it, which is as a post-search filter, and if a person of ordinary skill did it that way, it wouldn't teach the claim. Okay. You're into eerie bubbles, so I'm going to hear from the other side. Thank you. Thank you. Good morning. I'd like to start where we just left off, which is that's actually not the combination that was proposed. It was not a combination where all of a sudden you have to do all of the teachings of Van Fleet with all of the teachings of CONIG. In fact, this is a substantial evidence case, right? So we look at what the board found, and what the board found, which was how we mapped it, is on Appendix 13, where the board specifically points out, and this is in the first full paragraph about halfway down, this characterization of Van Fleet, however, is consistent with petitioner's contentions, which simply rely on Van Fleet's teachings of restricting a search to items not previously viewed by a user, citing back to the petition. The paragraph goes on, and I think the most important is the last sentence, which says, Petitioner does not assert that Van Fleet alone teaches the proximal neighborhood subject matter of Claim 1. In fact, we strongly believe, as did the board below with substantial evidence, that CONIG alone shows that only unseen documents come into the proximal neighborhood. The only reason that we added Van Fleet was if someone were to make the challenge, as they did, that the word only doesn't appear in CONIG. And so one of ordinary skill in the art would look to see that there may in fact be reasons that you would want to restrict to only unseen documents, and that's the quote of Van Fleet that actually restricts the items to items not previously viewed. And just remind me, the reason why somebody might want to do that is? For example, they're more interesting. You've already seen it. It spends less of your time. The documents that you haven't seen would be of more interest to you because you've already seen other documents, and so you don't want to have to waste your time culling through those again. It's just like if you were to ask your clerks to show you cases that you haven't read in the last five days because those are going to be of more interest to you, and you'd rather spend your time with those. Something as simple as that. And that was laid out in the petition? That was, in fact, Your Honor, yes, including the FOX declaration supporting that, which talked about the fact that unseen documents may be of far more use. And I believe that's in paragraph 137 of FOX, which is on, let me get you an appendix site, 137 of FOX is at 715 of the appendix. But, Your Honor, I think it's also critically important for us to go back to the substantial evidence that supports the Board's decision that Koenig alone deals with only unseen documents. Unseen and seen are direct opposites to each other. If you tell someone to apply something to unseen documents, you are necessarily telling them don't do this for unseen documents. And that's exactly what we have in the Koenig reference, which the Board specifically found. And this is at appendix 12 of the Board's decision, where the Board acknowledging that you're trying to build a neighborhood of documents that are of interest to the user, the Board first points to, so this is at appendix 12 in the first paragraph, they lay out what the patent owner's arguments are and then say they disagree, and then why they disagree. They don't just say they disagree. They explain why. And they point to the fact that Koenig starts with the fact that the term PUD represents the user interest in the document regardless of the current information need and is calculated using a user model. So then we look to see, okay, well, what is this user model? And the Board goes on to say that Koenig states that each linked document is scored using the user model in step 176 of figure 18 and that that user model is applied to unseen documents to determine the probability that a document is of interest to the user. And that's in, as you've just noted, a section of the Koenig reference at appendix 914 entitled Applying the User Model to Unseen Documents. The only analogy I could come up with that was as dramatically opposite would be if you were to say something along the lines of give the food to the living people, that necessarily means you're not giving the food to the deceased people, something that dramatically different. So if you're applying it to unseen, you're not applying it to seen. And the Board had some scant letters. Can I just ask, if one had some doubts about the strength of the term necessary, does that change what we decide here? That is, if one thinks, well, in some context, that might be an implication, but not necessarily. So I think there's two ways to answer that, Your Honor. Actually, there's three ways. The first way is, no, I don't think it changes it because the Board only has to have substantial evidence to support its decision, and it does on page 12, and it lays it out very specifically. But if Your Honor is saying, well, maybe somebody could argue that unseen doesn't always mean unseen, that's the reason to add in Van Vliet, which says we're going to restrict it to unseen. So there is no possibility of something else coming in. And that is also supported by the Board's decision, and there's substantial evidence to support that fact as well. And that's later down on appendix page 12, this time citing to Van Vliet at 954 and 955. This also, Your Honor, I think the third thing, I said there were three ways to answer your question. The third way to answer your question is to look to the HP v. Musetech and Parker Vision v. Qualcomm case, which points out that, as Your Honors have pointed out in numerous other cases, if there is one embodiment that does teach what you need to teach for obviousness, it does not matter that there may be other things that teach something else. As long as the teaching is there, that is enough, and the substantial evidence that the Board relied on is set out very cleanly and very plainly on appendix page 12. And noting that none of the other arguments were raised today, unless Your Honors have questions, I would cede my time. Thank you. I appreciate your time and attention. Thank you. I'll respond to just a couple of points in the very limited time I have. First, the Board, in our view, read only into the claim. The Board also failed to consider contrary evidence, like the prosecution history I pointed to a moment ago, showing that Koenig is about ability, not excluding seen documents. And just the prosecution history of the patent here. Of Koenig. Of Koenig. I mentioned the part where it says you don't distinguish between seen and unseen, and we believe that distinction is critical. Third, the case law that my opponent just referred to doesn't say that a reference can render something obvious just because it coincidentally may align with what the patent does. It would have to actually be configured to do that, at least in some embodiment, which we believe is not met here. Thank you. We thank both sides. The case is submitted.